UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Randall Lamonte Bruster, | ) | Civil Action No. 8:18-cv-02866-CMC-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Andrew Saul[1], | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[2]  Plaintiff brought this

action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final

decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's

claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").[3]

For the reasons set forth below, it is recommended that the decision of the Commissioner

---

[1]Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[3]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

In June 2014, Plaintiff filed an application DIB and, in July 2014, he filed an application for SSI, both alleging an onset of disability date of November 4, 2010. [R. 335–338, 339–345.] The claims were denied initially and upon reconsideration. [R. 160–177, 193–221, 241–248.] Thereafter, Plaintiff requested a hearing before Administrative Law Judge ("ALJ"), and, on January 31, 2017, ALJ Nicholas Walter conducted a de novo review hearing on Plaintiff's claims. [R. 46–98.] At the hearing before the ALJ, Plaintiff amended his alleged onset date to December 30, 2013. [R. 357.] On July 6, 2017, the ALJ held a supplemental hearing to obtain testimony from a medical expert and board certified rheumatoligist, Dr. Duby, on the issue of ankylosing spondylitis. [R. 99–123.]

The ALJ issued a decision on September 11, 2017, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 16–37.] At Step 1,[4] the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2013, and had not engaged in substantial gainful activity since December 30, 2013, the amended alleged onset date. [R. 18, Findings 1 & 2.] At Step 2, the ALJ found that Plaintiff had the following severe impairments: spinal disorder, inflammatory arthritis, osteoarthritis, gout, and affective disorder. [R. 19, Finding 3.] The ALJ also found that Plaintiff had a medically determinable impairment of fibromyalgia on or prior to December 30, 2013, but he found

---

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

no evidence that the impairment met the 1990 or 2010 American College of Rheumatology ("ACR") classification criteria. [R. 19–20.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 20, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs; the claimant can never climb ladders, ropes and scaffold; he can occasionally stoop, kneel, crouch, and crawl; he can never be exposed to no hazards; he can occasionally reach overhead. The claimant can perform simple routine tasks; time off task can be accommodated by normal breaks; in addition, he is able to tolerate few changes in the routine work setting.

[R. 24, Finding 5.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform his past relevant work as a cut off (cross over) saw operator, material handler, and auto detailer. [R. 35, Finding 6.] However, based on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 35, Finding 10.] Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from November 4, 2010, through the date of the decision. [R. 36, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals Council declined review. [R. 1–6.] Plaintiff filed this action for judicial review on October 23, 2018. [Doc. 1.]

**THE PARTIES' POSITIONS**

Plaintiff contends that the ALJ committed error, requiring the decision to be remanded for additional administrative proceedings. [Doc. 14.] Specifically, Plaintiff argues a clear conflict exists between the Dictionary of Occupational Titles ("DOT") and the VE's testimony because "[t]he 4th Circuit has ruled that if a claimant is limited to simple, routine, repetitive tasks, then the DOT says he cannot perform a GED 2 job." [*Id*. at 34.] Plaintiff contends that the ALJ's failure to elicit an explanation regarding this particular conflict warrants remand for further evaluation. [*Id*. at 35–36.]

The Commissioner contends that the decision is supported by substantial evidence and should be affirmed. [Doc. 15.] The Commissioner argues that the "conflict" alleged by Plaintiff was not "apparent" as required in SSR 00-4p, and that, "[u]nlike the claimants in *Henderson* and *Thomas*, Plaintiff is unable to identify any textual conflict between the DOT and the vocational expert's testimony in his case because there is none." [*Id*. at 7–9.]

**STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than

a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C.

§ 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brenem v. Harris*, 621 F.2d 688, 690–91 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new

material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. §

405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by

amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of

Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I. The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

---

2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders'* construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches Step 5, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

## A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out

in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.     *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.     *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

primarily from an exertional impairment, without significant nonexertional factors.[8]  20

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving

exertional limitations).  When a claimant suffers from both exertional and nonexertional

limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case,

the Commissioner must use a vocational expert to establish the claimant's ability to perform

other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because

we have found that the grids cannot be relied upon to show conclusively that claimant is

not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to

prove by expert vocational testimony that despite the combination of exertional and

nonexertional impairments, the claimant retains the ability to perform specific jobs which

exist in the national economy.").  The purpose of using a vocational expert is "to assist the

ALJ in determining whether there is work available in the national economy which this

particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's

testimony to be relevant, "it must be based upon a consideration of all other evidence in the

record, . . . and it must be in response to proper hypothetical questions which fairly set out

all of claimant's impairments."  *Id.* (citations omitted).

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.   Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to

support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment

to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also* *Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.      Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  Social Security Ruling ("SSR") 16-3p provides, "[i]n considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  Social Security Ruling 16-3p Titles II and XVI:  Evaluation of Symptoms In Disability Claims, 82 Fed. Reg. 49,462, 49,464 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion); *see also*

SSR 16-3p, 82 Fed. Reg. at 49,463.  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce" the alleged symptoms.  *Id.* (quoting *Craig*, 76 F.3d at 594); *see also* SSR 16-3p, 82 Fed. Reg. at 49,463.  Second, the ALJ must evaluate "the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . or to function independently."  SSR 16-3p, 82 Fed. Reg. at 49,464; *see also* 20 C.F.R. § 404.1528 (noting that the ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence).

## APPLICATION AND ANALYSIS

Plaintiff contends "the binding law of our Circuit is that the ALJ cannot simply take, at face value, the vocational expert's claim that there is no conflict between his testimony and the DOT."  [Doc. 14 at 32.]  Plaintiff argues that, "[w]hen there is such an apparent unresolved conflict between the VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled."  [*Id.* at 35.] Further, Plaintiff argues that, "although the VE indicated that were no conflicts, the VE gave no explanation regarding the discrepancy between the GED reasoning levels and the ALJ's limitation to simple, routine tasks.  The ALJ's failure to elicit an explanation regarding these particular conflicts warrants remand for further evaluation. "  [*Id.* at 36.]

The Commissioner, in response, argues that the conflict alleged by Plaintiff was not "apparent" under SSR 00-4p. [*Id.* at 7.] The Commissioner argues that Plaintiff is employing an "express language" standard in his argument that was rejected by the Fourth Circuit in *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015). [*Id.* at 7–8.] The Commissioner also argues that both *Henderson v. Colvin*, 643 F. App'x 273, 277 (4th Cir. April 5, 2016) and *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019), applied the "express language" concept from *Pearson*, but, unlike in *Henderson* and *Thomas*, Plaintiff in this case is unable to identify any textual conflict between the DOT and the VE's testimony because there is none. [*Id.* at 8–10.] The Commissioner argues that "Plaintiff's reliance on *Henderson*, and *Thomas* is misplaced: if anything, those decisions cut against his position." [*Id.* at 11.]

### Resolving Conflicts Between VE Testimony and the DOT

There is a split among the courts in the Fourth Circuit regarding whether a conflict exists between a finding by a VE that an individual is limited to simple, routine work and a finding that the same individual is capable of work at the GED 2 or 3 level.[9] Further, in

---

[9] *See, e.g.*, *Mullis v. Colvin*, No. 1:11-cv-0022, 2014 WL 575722, at *11, n.11 (M.D. N.C. Feb. 11, 2014), *Report and Recommendation adopted by* 2014 WL 2257188 (M.D. N.C. May 29, 2014) (collecting cases); *Williams v. Astrue*, No. 3:11-cv-592-MOC-DSC, 2012 WL 4756066, *5 (W.D. N.C. Aug. 27, 2012) ("Because the ALJ limited Plaintiff to unskilled work, and the VE suggested jobs with a reasoning development level of three or lower, there was no conflict between the VE's testimony and the DOT."). Similarly, in *Shivers v. Colvin*, No. 6:12-cv-3381-SB, 2014 WL 1315183 (D.S.C. Mar. 27, 2014), the Court considered whether an ALJ erred in relying upon an expert's testimony when there was an alleged apparent conflict between the Plaintiff's RFC and the GED levels of three jobs identified by the VE that Plaintiff could perform. In *Shivers*, the Defendant argued that the Fourth Circuit has not addressed the correlation between GED levels and a limitation to simple, routine, repetitive tasks. *Id.* at *3. In ruling for the Plaintiff, the Court noted that the District of South

courts in this District, have repeatedly remanded cases for further administrative proceedings where the ALJ failed to inquire of the VE whether a claimant, who was limited to simple, routine, repetitive work, was capable of performing certain jobs that the DOT classified as reasoning level 2 or 3. *See Christopherson v. Colvin,* No. 6:15-cv-4725-JMC, 2016 WL 7212785 (D.S.C. Dec. 13, 2016), *adopting Report and Recommendation at* 2016 WL 7223283; *Shivers*, 2014 WL 1315183, at *19–20; *Graham-Willis v. Colvin*, No. 1:12-cv-2489-JMC, 2013 WL 6840465, at *6–8 (D.S.C. Dec. 27, 2013); *Martin v. Astrue*, No. 6:11-cv-1572-TMC-KFM, 2012 WL 4479280, at *15–16 (D.S.C. July 27, 2012), *Report and Recommendation adopted by* 2012 WL 4482943 (D.S.C. Sept. 27, 2012); *Phillips v. Astrue*, No. 3:11-cv-1085-MBS-JRM, 2013 WL 3945310, at *8–9 (D.S.C. Aug. 14, 2012), *Report and Recommendation adopted by* 2012 WL 3945313 (D.S.C. Sept. 7, 2012); *Reid v. Astrue*, No. 6:10-cv-2118-MBS-KFM, 2012 WL 667164, at *12–13 (D.S.C. Feb. 8, 2012), *Report and Recommendation adopted by* 2012 WL 663482 (D.S.C. Feb. 29, 2012); *Tadlock v. Astrue*, No. 8:06-cv-3610-RBH, 2008 W L 628591, at *10 (D.S.C. March 4, 2008).

In *Henderson*, the Fourth Circuit found "that there is an apparent conflict between an RFC that limits [the claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." 643 F. App'x at 276–77.

---

Carolina has previously found an existing conflict between a GED reasoning level of two and three and a limitation to simple, routine, repetitive tasks. *Id*. at *3. Additionally, in that case, the ALJ never discussed with the VE whether the Plaintiff's limitation to simple, routine and repetitive tasks was compatible with the identified jobs; thus, the Court found it would be pure speculation to find that the VE considered and resolved the issue.

The Court further explained that, "[u]nlike GED reasoning Code 1, which requires the ability to '[a]pply commonsense understanding to carry out simple one-or-two-step instructions,' GED Reasoning Code 2 requires the employee to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'" *Id.* (citing DOT, 1991 WL 688702 (2008); *Rounds v. Comm'r*, 807 F.3d 996, 1003 (9th Cir. 2015) (holding that reasoning code two requires additional reasoning and understanding above the ability to complete one-to-two step tasks)). Although *Henderson* is an unpublished opinion, this Court has considered its holding in subsequent cases, finding that the ALJ failed to resolve apparent conflicts between the DOT and VE testimony. *See, e.g., Pressley v. Berryhill*, No. 8:16-cv-2716-BHH-JDA, 2017 WL 4174780, at *10–11 (D.S.C. Aug. 24, 2017), *Report and Recommendation adopted by* 2017 WL 4156460 (D.S.C. Sept. 19, 2017) (finding that an apparent conflict existed between the jobs the VE identified in response to a hypothetical question that restricted the plaintiff to simple, routine, and repetitive tasks and the DOT's description of the job as having GED reasoning levels of 2 and 3); *Dewalt-Gallman v. Berryhill*, No. 9:16-cv-2332-PMD-BM, 2017 WL 2257418, at *4 (D.S.C. May 5, 2017), *Report and Recommendation adopted by* 2017 WL 2225133 (D.S.C. May 22, 2017) (determining that the ALJ failed to resolve a conflict between the VE's identification of jobs described in the DOT as having a GED reasoning level of 3 and a restriction in the RFC to "simple, routine, and repetitive tasks requiring only simple work related instructions and decisions as well as relatively few work place changes"); *Christopherson*, 2016 WL 7223283, at *9 (holding that an apparent conflict existed between the VE's identification of

19

jobs having GED reasoning levels of two and three and an RFC that limited the plaintiff to "simple, routine, and repetitive tasks"); *Sullivan v. Colvin*, No. 8:16-cv-79-JMC-JDA, 2016 WL 7228854, at *10 (D.S.C. Nov. 10, 2016) (finding that the ALJ erred in either failing to recognize or neglecting to obtain an explanation as to a conflict between an RFC for "one or two step tasks" and the VE's identification of jobs with a GED reasoning level of 2).

Subsequently, the Fourth Circuit considered restrictions similar to the limitation to simple and routine tasks found in Plaintiff's RFC and found an apparent conflict between those restrictions and a GED reasoning level of 3. *See Keller v. Berryhill*, 754 F. App'x 193 (4th Cir. 2018) (finding a limitation to short and simple instructions appears inconsistent with jobs that require a GED reasoning development level of 3). The Fourth Circuit acknowledged that "[s]everal other courts of appeals have relied on precedent addressing a simple tasks limitation when considering a simple instructions limitation," and it concluded it was appropriate to do the same in that case. *Id.* at * 197, n.4. In doing so, the Fourth Circuit stated, "it seems that such a limitation falls somewhere between Levels 1 and 2." *Id*. at *197–98.

More recently, in *Thomas*, the Fourth Circuit evaluated an RFC that provided the plaintiff was "able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace . . . [and] must avoid work involving crisis situations, complex decision making, or constant changes in a routine setting." 916 F.3d at 310. In that case, all three jobs provided by the VE required a GED reasoning level of 2, and the Fourth Circuit found the ALJ erred in two respects: she "did not sufficiently

20

explain her conclusions regarding [the plaintiff's] mental impairments," such as what the terms production rate or demand pace meant, and "did not identify or resolve an apparent conflict between the DOT and the testimony of the VE." *Id*. at 311. The Fourth Circuit held that, "while the ALJ stated that [the plaintiff] could not perform work 'requiring a production rate or demand pace,' she did not give us enough information to understand what those terms mean" and, combined with other missteps, the ALJ's RFC evaluation frustrated the ability to conduct meaningful review. *Id*. at 312. Additionally, the Fourth Circuit held there was an "'apparent conflict' between a limitation to 'short, simple instructions' . . . and a need to carry out 'detailed but uninvolved . . . instructions' (as found in jobs requiring Level 2 reasoning)." *Id*. at 313–14 (noting it was "not a categorical rule—some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved," but explaining the conflict was as apparent as that in *Pearson* and the ALJ should have resolved it).

Here, the ALJ found that Plaintiff was capable of light work with mental limitations which include the following: "claimant can perform simple routine tasks; time off task can be accommodated by normal breaks; in addition, he is able to tolerate few changes in the routine work setting." [R. 24.] The ALJ cited to a mental status questionnaire from Charles Arnold, FNP, which noted that Plaintiff had no work related functional limitations due to a mental condition, but found the opinion was entitled to little weight because it was rendered by a non-acceptable medical source and because, "while [Plaintiff] has no formal mental health treatment, he is on common medications that help treat mental health issues and

I have found his mental impairment severe." [R. 32.] The ALJ also noted that he gave great weight to the opinion of Bruce A. Kofoed, Ph.D. who diagnosed Plaintiff with pain disorder, not otherwise specified, and depressive disorder, not otherwise specified, and found Plaintiff "appeared capable of doing simple repetitive tasks." [R. 33.] Further, the ALJ gave little weight to the opinion of Plaintiff's treating rheumatologist, who opined, among other things, that Plaintiff "would be absent from work more than 4 times a month" as a result of his symptoms. [*Id.*]

In a first hypothetical to the vocational expert, the ALJ presented the following mental limitations[10]:

> . . . limited to simple, routine tasks. Time off task could be accommodated by normal breaks. And able tolerate few changes in the routine work setting.

[R. 90.] In response, the VE identified a number of light exertional level jobs, at SVP 2, that Plaintiff could perform. [R. 90–91.] In a second hypothetical, the ALJ reduced the exertion level to sedentary with all of the above limitations remaining the same. [R. 92.] In response, the VE identified a number of sedentary exertional level jobs at SVP 2 that Plaintiff could perform. [R. 779.] In a final hypothetical, the ALJ asked the VE to apply either of the following limitations to hypotheticals 1 and 2:

1.    four or more absences a month; or

2.    20% time off task in addition to normal breaks due to either pain or the need to frequently change position.

---

[10]The Court focuses its analysis on the mental limitations, as Plaintiff does not challenge the ALJ's exertional limitations noted in the RFC.

[R. 93.]  In response, the VE determined that there would be no work for this hypothetical individual.  [*Id.*]

Plaintiff challenges the ALJ's conclusion, citing this Court's prior rulings and the Fourth Circuit's holding in *Henderson*, suggesting that there is a clear conflict between the DOT and the VE testimony because the jobs identified have a GED reasoning level of 2 and Plaintiff is limited to simple, routine work.  [Doc. 11 at 29.]

Specific Vocational Preparation ("SVP") is defined by the DOT as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C, 1991 WL 688702.  General Educational Development ("GED") embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.  *Id.*  The GED Scale is composed of three divisions: Reasoning Development (R), Mathematical Development (M), and Language Development (L).  *Id.*  With respect to a GED level of 2, Reasoning Development, the following apply:

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

[*Id.*]

In *Piner v. Berryhill*, No. 1:17-cv-317-TMC-SVH, 2017 WL 4712084, *14 (Sept. 28, 2017), this Court explained that "[a] close examination of the GED reasoning levels" supported "the existence of an apparent conflict" between GED reasoning level 2 and a restriction to simple, routine tasks, explaining as follows:

> The DOT specifies that jobs with a GED reasoning level of one require workers to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, 1991 WL 688702 (2016). Jobs with a GED reasoning level of two require workers to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

*Id.* Pertinent to the instant case, the Court found that the restriction to simple, routine tasks was more akin to GED reasoning level 1 than 2 "because the abilities to perform simple tasks and to make simple work-related decisions in the RFC assessment are similar to the provision for applying commonsense understanding to carry out simple instructions at GED reasoning level one." *Id.* Additionally, the "need for routine tasks" is "consistent with the provision for standardized situations at GED reasoning level one." *Id.* The Court further noted that "[i]n contrast, the DOT's descriptions of GED reasoning level[ ] two" suggests the "jobs require more detail and variables than the RFC assessment describes." *Id.*

Upon review, the Court notes that here, when questioning the VE, the ALJ failed to ask the VE about conflicts between his testimony and the DOT, and he failed to ask the VE to address whether performing simple, routine work was consistent with work requiring a reasoning level of 2 in this instance. [R. 89–93.] The Court notes that "the VE's failure to identify the alleged conflict between the DOT and the VE's testimony did not absolve the ALJ of his independent duty to consult the DOT and to determine whether the VE's testimony was consistent with its descriptions of the identified jobs." *Pearson v. Comm'r of Soc. Sec.*, No. 1:16-cv-2726-PMD-SVH, 2017 WL 1378197 at *12 (D.S.C. Mar. 29, 2017) (citing *Pearson*, 810 F.3d at 208; SSR 00-4p).

Further, the VE found that Plaintiff could perform the identified jobs based on a hypothetical with the following mental limitations: "limited to simple routine tasks. Time off task could be accommodated by normal breaks. And able to tolerate few changes in the routine work setting." [R. 90.] And, while the VE testified that a person with Plaintiff's work experience and these limitations could do work at the SVP 2 level, there is no discussion as to her ability to meet the requirements of the GED 2 level. The limitations included in the hypothetical actually appear more in line with the reasoning associated with GED level 1. As noted, the DOT specifies that jobs with a GED reasoning level of 1 require workers to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "*[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job.*" DOT, 1991 WL 688702 (2016) (emphasis added). The ALJ clearly limited Plaintiff to jobs with occasional or no variables, such as few changes in the routine work setting. It would be speculation for the Court to assume the vocational expert realized the apparent conflict between jobs at GED level 2 and the need to have a job with occasional or no variables.

In light of the above, the undersigned rejects the Commissioner's argument that no conflict exists between the restrictions in the RFC assessment and the DOT. The undersigned finds that the ALJ erred in relying on the VE's identification of the jobs to meet the Commissioner's burden at Step 5 without having resolved the conflict between simple, routine tasks, Plaintiff's additional mental limitations, and the DOT's indication that the identified jobs had a GED reasoning level of 2. Accordingly, this Court finds it prudent to remand this case back to the Commissioner to obtain testimony from the VE with respect to any conflicts with Plaintiff's limitation to simple, routine work and the identified jobs.

**Remaining Allegations of Error**

On remand, the ALJ will be able to reconsider and explain his consideration of any conflicts between the DOT and the VE's testimony. *Harris v. Asture*, No. 9:09-cv-0028-HFF, 2009 WL 5125215, *4 (D.S.C. Dec. 28, 2009); *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763–764 (W.D.Va. 2002) (explaining that, on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo). Further, the Court declines to address Plaintiff's remaining allegations of error; however, on remand, the ALJ should consider Plaintiff's remaining allegations of error.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g), and that the case be **REMANDED** to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

August 30, 2019
Greenville, South Carolina